# JOINT DELINQUENCY POLICY & PROCEDURES

## ADOPTED BY THE TRUSTEES OF THE ELECTRICAL WORKERS LOCAL UNION 369 BENEFIT FUND

**and**

## ELECTRICAL WORKERS LOCAL UNION NO. 369 RETIREMENT FUND

**Amended and Restated Effective September 1, 2022**

The following rules and procedures are adopted by the Trustees of the Electrical Workers Local Union 369 Benefit Fund and Electrical Workers Local Union No. 369 Retirement Fund ("Funds") for the purpose of establishing a written policy for the investigation, enforcement and collection of contributions owed to the Funds pursuant to collective bargaining agreements and/or assent of participation agreements, thereby effectuating the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). These policies and procedures are intended to clarify the rights and responsibilities of all contributing Employers, in accordance with the authority granted in the Funds' Amended Agreement and Declaration of Trust.

The Trustees acknowledge their duty to maintain a reasonable, systematic, and diligent process to monitor and collect Employer contributions. The Trustees further acknowledge requirements of prohibited transaction exemption 76-1 regarding the determination of uncollectible funds, agreements for payment of less than the full amount owing, and agreements for payment of amounts owing over a period of time. The intent of the Trustees is to comply at all times with the mandates of the Employee Retirement and Income Security Act of 1974 ("ERISA") and the Internal Revenue Code. This statement of policy shall be administered and interpreted with such intent.

## I. DUTIES OF THE FUND OFFICE

### Ascertainment of Delinquent Employers

A. Monthly Contributions.

Collective bargaining agreements between the Louisville Chapter, National Electrical Contractors Association, Inc. ("NECA") and International Brotherhood of Electrical Workers AFL-CIO-CLC, Local Union No, 369 ("Union") and/or between the Union and non-NECA employers require that monthly fringe benefit contributions be made on behalf of bargaining unit employees to the Funds by employers who are bound to said collective bargaining agreements. Assent of participation agreements between the Funds and signatory employers permit contributions to be made on behalf of non-bargaining unit employees.

Contributions and contribution reports must be received by the Fund Office, or Stock Yards

Bank & Trust ("SYB") in the case of contributions via ACH, on or before the Due Date, which is the 15th day of the month following the month during which an eligible employee worked or received wages under a collective bargaining agreement. Contributions and contribution reports for non-bargaining unit employees must be received by the Fund Office on or before the 15th day of the month following the close of the last payroll on the preceding month. If the 15th day falls on a weekend or holiday, then the Due Date is the last regular business day before the 15th. It is the responsibility of the employer to arrange for the mailing or delivery of checks, or the scheduling of ACH payments, sufficiently in advance to ensure actual receipt of the payments on or before the Due Date.

If required contributions or contributions reports are not received at the Fund Office, or SYB if via ACH, by the due date, the contributions are delinquent and the employer is deemed in violation of the collective bargaining agreement and/or assent of participation agreement and the trust agreement incorporated therein.

NECA and the Union shall notify the Fund Office, in writing, of any contribution rate changes.

B. Delinquency Reports.

The Fund Office will enter all employer reports and contributions received on a monthly basis following the due date, prepare a delinquency report of all employers who had reported in the previous month but who appear delinquent in their current monthly contributions. The delinquency report will include not only employers who have failed to file contribution report forms, but also employers who have failed to remit the full contribution payment owed to the Funds.

Following completion of the delinquency report, the Fund Office will prepare and send to the Business Manager of the Union, or his designee, and to the Funds' Trustees (a) a list of employers who actually worked and reported contributions during the current reporting period and (b) a copy of the delinquency report. The Union will promptly notify the Fund Office whether any employers who appear on the delinquency report were no longer working within the Union's jurisdiction for the reporting period at issue. The initiation of the delinquency notice procedures set forth below are not dependent upon the Union responding to the monthly delinquency report.

**Notification to Delinquent Employers**

The Fund Office will initiate notification to delinquent employers as follows:

**1.** On or after five (5) business days after the due date, the Fund Office will send a notice (Notification #1) to any employer who worked in the prior month and who failed to submit a report or pay contributions for the current month by the due date. Notice may be sent via United States Postal Service ("USPS"), commercial delivery such as UPS, email (if authorized by Employer) or Fax. The notice will advise the employer (a) that liquidated damages and interest have been assessed on the delinquency and (b) that the delinquent report and/or contributions must be forwarded to the Fund Office within three (3) business days from the date of Notification #1. This notice will also advise the employer of the subsequent procedures if the delinquency is not remedied. The employer will be further

informed that a separate notice will be sent from the Fund Office to the employees for whom contributions were reported in the prior month that contributions and hours will not be credited effective the first day of the month following the month in which the report is delinquent.

**2.** On or after eight (8) business days after Notification #1, the Fund Office will mail a second notice (Notification #2) to the delinquent employer. The employer will be advised that contributions must be received within five (5) business days from the date of Notification #2 or, if the employer does not have a fringe benefit bond, the employer will be required to post a fringe benefit bond, with good corporate surety thereon, or a satisfactory letter of credit with the Fund Office.

A copy of Notification #2 will be sent to the Fund Attorney.

**3.** On or after ten (10) business days after Notification #2, the delinquent employer will be referred to the Fund Attorney for appropriate action. This may include a demand letter to the delinquent employer, explaining (a) that liquidated damages on the delinquency have increased, (b) that legal fees have been assessed, (c) that interest and audit charges apply, and (d) that a lawsuit may be filed unless the delinquency is promptly resolved. A copy of the Fund Attorney's letter will be sent to the Fund Office.. Absent mitigating factors, including advice of counsel, it is the intent of the Trustees to file a lawsuit against employers who remain delinquent.

The foregoing notice procedures may be waived in the event of extenuating circumstances, such as but not limited to, an announcement by a delinquent employer that it is going out of business, a non-resident delinquent employer is leaving the jurisdiction, or changes in the ownership of the delinquent employer.

Litigation may be accelerated provided no less than *5* days' notice is given to the employer to remedy the delinquency.

## II. LATE PAYMENT ASSESSMENTS

It is understood and recognized that, under ERISA, one form of prohibited transaction is an extension of credit between the plan and a party-in-interest. Delinquent contributions may be considered a loan due from the employer to the plan and thus, constitute an impermissible extension of credit.

It is further recognized that, inasmuch as the Retirement Fund is a participant-directed, defined contribution plan, late payments result in actual harm to those participants for whom contributions are owed but not paid by the employer because (a) the participant is not credited with the contributions for work performed; (b) the participant cannot invest the contributions earned in his or her selected investment options; and (c) the participant is denied investment experience. Moreover, late payments to the Benefit Fund result in actual harm to the Fund and its participants because the participant is not credited with contributions for work performed.

Additionally, the expenses incurred by the Funds in the collection of delinquent Contributions are allocated among all plan participants and deducted on a pro rata basis from all participant account

balances. Liquidated damages assessments are a reasonably proportional approximation of the actual expenses and damages incurred by the Funds as a result of delinquent contributions.

Therefore, in consideration of the foregoing, the Trustees adopt the following late payment assessments:

1. Liquidated damages in the amount of 5% of the unpaid contributions or $50.00 plus 1 1/2 % of the unpaid contributions, whichever is less, will be assessed against any delinquent employer who is sent Notification #1.

2. Additional liquidated damages in the amount of 5% of the unpaid contributions or $50.00 plus 1 1/2 % of the unpaid contributions, whichever is less, will be assessed against any delinquent employer who is sent Notification #2.

3. Liquidated damages in the amount of 10% of the unpaid contributions will be assessed against any employer who remains delinquent ten (10) business days after being sent Notification #2.

4. Interest at the rate of 8% per annum from the date the contributions were due until paid will be assessed against any delinquent employer who is sent Notification #1.

5. If the Fund Attorney becomes involved in the collection of delinquent contributions or related sums, the delinquent employer will be responsible for the payment of the Funds' attorney's fees and costs.

The Fund Office will notify an employer, in writing, that liquidated damages and interest have been assessed for delinquent contributions and direct the employer to remit a check therefore to the Fund Office within ten (10) business days. Should an employer fail to remit the liquidated damages and interest, the matter will be treated as an additional delinquency and the notification procedures above will apply, including the assessment of attorney's fees and costs.

An employer who is assessed liquidated damages, interest, audit costs, collection costs, and/or attorney's fees may appeal the assessment, in writing, to the Trustees. It is the policy of the Trustees to grant no more than one waiver of liquidated damages and attorney's fees within a rolling 3-year period; provided, however, that a new signatory employer, acting in good faith may be granted an additional waiver by the Trustees if the employer's initial remittance report and payment is untimely.

The Trustees have further determined that interest on delinquent contributions is never to be waived.

## III. AUDIT PROCEDURES

It is the intention of the Trustees to conduct a program of routine audits. Approximately one-fifth

of contributing employers will be identified each year for audit, provided that no employer shall be identified for routine audit in consecutive years. Such audits will examine the last three complete calendar years or, if fewer, all complete calendar years since the Funds' last audit of the employer.

Notwithstanding any other provision of this policy, the Trustees have determined to audit any employer who is delinquent 3 times within a rolling 3-year period. The Fund Office will monitor delinquencies and identify qualifying employers. Such audits will examine the last three complete calendar years or, if fewer, all complete calendar years since the Funds' last audit of the employer.

In addition, the Trustees have determined to audit new signatory employers within two years of the date contributions are first remitted to the Funds.

Once an employer is identified for audit, the Fund Office will initiate the audit. The Fund Office shall advise the employer by letter of the pending audit. The Fund Office shall then contact the employer to arrange the time and place of the audit. Where deemed appropriate or necessary to minimize travel and other expenses, the Fund Office may elect to conduct an audit remotely, by reviewing documents submitted by the employer through secure electronic means.

If an employer refuses to produce complete payroll books and records, the Fund Office will promptly notify the Fund Attorney. The Fund Attorney will take the necessary steps, up to and including the filing of a lawsuit, to compel production of the payroll documents. Likewise, if the Fund Office has any difficulty in scheduling the audit, written notice of the problem shall be promptly given to the Fund Attorney and appropriate action will then be taken, up to and including the filing of a lawsuit.

If the employer provides the necessary payroll data, the Fund Office will conduct the audit in accordance with generally accepted standards for multiemployer benefit plans. Upon completion of the audit, the Fund Office will prepare an audit report and submit that report with a cover letter summarizing its findings to the Trustees and Fund Attorney.

If an audit discloses unpaid contributions owed to the Funds, the Fund Office will calculate liquidated damages equal to 10% of the unpaid contributions, interest, attorney fees, if any, and the costs of the audit, if applicable, and forward a demand letter and copy of the audit report to the employer. Should an employer dispute any of the audit findings, the matter will be handled by the Fund Attorney, as circumstances so warrant.

In the event an employer fails to satisfy the demand letter, the matter will be referred to the Fund Attorney for appropriate action. The Fund Attorney will file suit when necessary and authorized by the Trustees. Liquidated damages, interest, and attorney's fees and costs will continue to accrue until the matter is resolved through judgment, compromise or settlement.

## IV. INSTALLMENT PAYMENT AGREEMENTS

Pursuant to the following guidelines, the Fund Office and/or the Fund Attorney may be authorized by the Trustees to enter into an installment payment agreement with an employer to pay any amounts due and owing to the Funds as the result of an audit or otherwise:

(a) The amount to be paid by the employer is exactly the total amount of contributions due plus liquidated damages, interest, and attorney's fees and audit costs, if applicable;

(b) The time for payment of the total amount is no longer than 6 months; and

(c) The installment payment agreement is conditioned upon the employer's payment of all current contributions as they become due. Failure to make current contributions and/or an installment payment will void any payment plan established pursuant to these guidelines and all unpaid amounts will become immediately due and owing, whereupon the employer's bond or letter of credit will be called immediately and the matter will be referred to the Fund Attorney for appropriate legal action.

If an employer desires a payment plan not in compliance with these guidelines, the Fund Office or Fund Attorney, if applicable, will refer the matter to the Trustees for consideration and resolution. Under compelling circumstances, the Trustees have the authority to compromise liquidated damages, attorney's fees, collection costs, audit costs and other expenses and to extend the duration of an installment payment agreement.

No employer will be granted the courtesy of an installment payment agreement more than 3 times within a rolling 5-year period. Any employer who defaults and fails to cure a breach of an installment payment agreement relinquishes the right to any future installment payment agreements within the current 5-year period.

On a regular basis, the Fund Office and/or Fund Attorney will update the Trustees as to outstanding installment payment agreements.

## V. LEGAL PROCEEDINGS

In the event an employer remains delinquent five (5) business days after the mailing of a demand letter by the Fund Attorney, or fails to remit outstanding late payment assessments, the Fund Attorney will, if authorized by the Trustees, file a lawsuit in the appropriate federal district court. In such action, the complaint will seek judgment for all unpaid contributions, liquidated damages, interest, audit costs, attorney's fees, costs of the action, and post-judgment interest.

If the Fund Attorney is authorized by the Trustees to file suit to compel an audit, the employer shall be notified that litigation will be instituted against the employer unless the employer contacts the

auditor to schedule the audit within seven (7) business days.

Notwithstanding the foregoing, the Fund Attorney is granted the discretion to decide on a case-by-case basis if a motion for injunctive relief is appropriate and to move for a temporary restraining order, for a preliminary injunction and for a permanent injunction against a delinquent employer.

The Fund Attorney is further directed to handle employer bankruptcies and to take appropriate action, including the filing of proof of claims, to protect the interests of the Funds and their participants.

On a regular basis, the Fund Attorney will provide an update of legal activities to the Trustees. During the interim, the Trustees, through their Executive Committee or other designee will assist the Fund Attorney in resolving issues relating to delinquent employers.

## VI. OVERPAYMENTS/UNDERPAYMENTS

Consistent with Section 403(c) of ERISA, any employer that has made an overpayment to the Funds may submit a written request for a refund to the Fund Office. If such a request is received, the Fund Office will investigate the alleged overpayment and provide a summary of findings to the Trustees. The Trustees may, in their discretion, vote to refund any overpaid contributions made by the employer no more than six (6) months immediately preceding the date the employer provided its written request to the Fund Office. Further, no interest shall accrue on the amount of the overpayment. Should a request for refund be approved by the Trustees, the return of overpayment(s) will occur within the six (6) months immediately following the date the Fund Office determines an overpayment was made.

Any benefits paid, premiums paid and/or administrative expenses required to calculate the amount to be refunded shall be deducted from the amount of overpaid contributions. No refund shall be made unless the employer first executes a full release of all claims and an agreement to indemnify, defend, and hold harmless the Funds, its Trustees, fiduciaries and agents, from any and all claims relating to the alleged overpayment.

Nothing herein shall prohibit the identification, adjustment, or refund of overpayments by the Fund Office during routine handling of monthly reports and contributions.

Underpayments of employer contributions will be handled in the same manner as delinquent employer contributions, including the application of liquidated damages, interest, audit costs, collection costs, and attorney's fees. Underpayments of less than $5.00 in any given month will be "suspended" after sending Notifications #1 and 2 described above, but may be included in future collection efforts against the employer.

## VII. PROCEDURES IN THE EVENT OF RETURNED CHECKS

Should the Fund Office be advised that an employer has remitted a check that has been returned for insufficient funds, the matter will be treated as a delinquent contribution. If circumstances warrant, the matter will be immediately forwarded to the Fund Attorney to contact the appropriate federal and/or state authorities and for such legal action as is deemed necessary.

## VIII. BONDING

A new employer shall provide a fringe benefit surety bond in favor of both Funds and shall maintain such bond in full force and effect for a period of two (2) years in amount determined by the following:

Employers employing two (2) to ten (10) workmen - $40,000.00;
Employers employing eleven (11) to twenty (20) workmen - $100,000.00;
Employers employing twenty-one (21) to thirty (30) workmen - $150,000.00;
Employers employing thirty-one (31) to forty (40) workmen - $200,000.00;
Employers employing forty-one (41) or more workmen - $300,000.00.

The required bond will be based upon the greater of: (1) the average number of covered employees during the past 6 months; or, (2) the number of covered employees during the most recent month. At the employer's option, a separate bond may be furnished for each of the two Funds, with each bond securing half of the required amount listed above.

Notwithstanding the foregoing, the Trustees reserve the right to require any employer who is delinquent two (2) times within a rolling twelve (12) month period, and who does not have a fringe benefit bond in an amount, and as required, in this section, to post a fringe benefit bond, with good corporate surety thereon, and maintain such bond in full force and effect until the employer has paid all outstanding delinquencies, including liquidated damages, and has made timely reports and contributions payments for a period of 24 consecutive months thereafter. The amount of such bond shall be determined by the chart above.

The foregoing requirements are in addition to, and not a replacement or substitute for, bonding requirements imposed by the collective bargaining agreement or another trust fund.

## IX. MISCELLANEOUS

These procedures are not intended to provide, nor shall they be construed to provide, any procedural, substantive, or other rights or defenses to any delinquent employer, nor to any participant or beneficiary. Variations from these procedures are not a defense, in any manner or to any degree or for any purpose, to any litigation or other efforts to collect any amounts owed by a delinquent employer,

These procedures are not, nor shall they be construed as, an agreement to or an amendment of

any collective bargaining agreement.

## X. APPLICATION OF LIQUIDATED DAMAGES AND INTEREST COLLECTED ON DELINQUENT CONTRIBUTIONS AND LATE PAYMENTS

The Trustees have the power and authority, in their sole discretion, to determine from time to time the application of liquidated damages and interest collected on delinquent employer contributions and the untimely remittance of employer reports and payments.

At the present time, the Trustees intend to apply liquidated damages received from delinquent employer contributions or from the untimely remittance of employer reports and payments to fund USERRA obligations of the Funds.

**IN WITNESS WHEREOF,** the Trustees of the Electrical Workers Local Union 369 Benefit Fund unanimously consent to and adopt the foregoing Amended and Restated Delinquency Policy the 23rd day of August, 2022 and authorize their duly appointed Chairman and Secretary in affix their names hereto.

Chairman

Secretary

**IN WITNESS WHEREOF,** the Trustees of the Electrical Workers Local Union No. 369 Retirement Fund unanimously consent to and adopt the foregoing Amended and Restated Delinquency Policy the 24 day of August, 2022 and authorize their duly appointed Chairman and Secretary in affix their names hereto.

Chairman

Secretary